IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MICHAEL STEPHEN VAUGHN, <br><br> *Appellant*, <br><br> v. <br><br> DANIEL AND CLAIRE HASSETT, <br><br> *Appellees*. | ) <br> ) <br> ) <br> ) <br> ) Civ. No. 1:24-cv-1793 (PTG/LRV) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Debtor-Appellant Michael S. Vaughn's appeal of the United States Bankruptcy Court for the Eastern District of Virginia's Memorandum Opinion and Order Overruling Claim Objection to Proof of Claim No. 14 ("Bankr. Op."). *See* Dkt. 1 (Notice of Appeal); *In re: Michael Stephen Vaughn*, No. 21-11260 (Bankr. E.D. Va., Sept. 26, 2024) ("Bankr. Dkt."), Dkt. 224 ("Bankr. Op."). On September 23, 2021, Appellees Daniel and Claire Hassett ("Appellees") filed a Proof of Claim for $250,000 against Appellant in the bankruptcy court based on a prior arbitration award they received against Appellant's company, Vaughn Homes, Inc. ("VHI"). On October 13, 2021, Appellant filed an Objection to Proof of Claim No. 14, seeking to either overrule the claim or set a hearing to determine Appellant's personal liability to the Appellees. Bankr. Dkt. 34. In its September 26, 2024 Order, the bankruptcy court overruled the Objection and permitted Appellees to file their claim. Bankr. Dkt. 224. The parties have fully briefed the appeal and appeared before the Court on oral argument. For the reasons that follow, the Court affirms the bankruptcy court's order.

# Background

### A. Factual Background

The following relevant facts are undisputed and were derived from the record in this case. *See also* Bankr. Op. at 1. Appellant is the sole owner and shareholder of VHI. Bankr. Op. at 1. In March 2019, Appellees entered into a contract with VHI for construction services on their Virginia home. Bankr. Dkt. 55 (Hassetts' Opp. to Obj. Against Proof of Claim) at 1. Because VHI failed to complete performance under the contract, Appellees received an arbitration award of $201,919.52 (plus interest at the rate of six percent running from January 17, 2020) against VHI in December 2019. *Id.*; Bankr. Op. at 2. In June 2020, the Circuit Court for Fairfax County entered the arbitration award as a default judgment against VHI. Bankr. Dkt. 55 at 1. On June 28, 2020, Appellees filed suit in the Circuit Court for Fairfax County against Appellant and VHI, seeking to pierce VHI's corporate veil and find Appellant personally liable for Appellee's injuries as VHI's "alter ego." *Id.* at 2. In June 2021, Appellees filed a separate fraudulent conveyance action against Appellant in North Carolina, seeking to prevent his transfer of a personal beach property to a limited liability company. *Id.*

### B. Bankruptcy Proceedings

On July 17, 2021, Appellant filed for Chapter 13 bankruptcy in the bankruptcy court. Bankr. Dkt. 1. On August 16, 2021, the Chapter 13 Trustee moved the court to convert the case to a Chapter 7 proceeding due to several "highly questionable pre-petition transfers" Appellant made and failed to disclose to the court.[1] Bankr. Dkt. 16 at 1. On October 25, 2021, the bankruptcy court granted a motion to convert the case to Chapter 7. Bankr. Dkt. 40. On November 26, 2024, the Chapter 7 Trustee filed a Plan of Liquidation outlining the liquidation of assets and proposed

---

[1] The transfers referred to Appellant's primary residence in Fairfax Station, Virginia and his vacation home in Corolla, North Carolina. Bankr. Dkt. 16 ¶¶ 9-10, 12.

2

distribution to creditors, including Appellees. Bankr. Dkt. 238. On January 23, 2025, the bankruptcy court approved the Plan of Liquidation, including legal fees of $170,760.21 and trustee fees of $66,096.31. Bankr. Dkt. 249 at 1-2. The Trustee subsequently disbursed the funds to Appellant's creditors. *See* Bankr. Dkt. 274. Pursuant to the Plan of Liquidation, Appellees received $66,894.04 from the Trustee. Dkt. 10, Ex. A ¶¶ 3-4.

On February 4, 2025, Appellant filed a Notice of Appeal of the bankruptcy court's January 23, 2025 Order approving the Plan of Liquidation. Bankr. Dkt. 253. On February 18, 2025, Appellant sought a stay of enforcement of the Plan of Liquidation pending the appeal, which the Bankruptcy Court denied on April 7, 2025. Bankr. Dkts. 260, 279. On March 13, 2025, the Trustee certified that the Estate had been fully administered and distributed to all creditors, including Appellees. Bankr. Dkt. 274. On June 10, 2025, on appeal, Judge Michael Nachmanoff from this District vacated and remanded the bankruptcy court's Order approving the Plan of Liquidation on the grounds that the bankruptcy court failed to apply the proper legal standard in approving the attorney fees. Bankr. Dkt. 283; *Vaughn v. Gold*, 671 B.R. 698, 712 (E.D. Va. 2025). On August 28, 2025, on remand, the bankruptcy court issued an order reducing the total legal fees award, in accordance with the proper legal framework. Bankr. Dkt. 284. The Order further instructed the Trustee to file an amended Plan of Liquidation. *See id.* at 22.

### C. Appellees' Proof of Claim No. 14

The instant appeal concerns Appellees' Proof of Claim No. 14. On September 23, 2021, Appellees filed Proof of Claim No. 14 for $250,000 against Appellant, based on the earlier arbitration award they won against VHI. Dkt. 10 at 4. In his Objection to Proof of Claim No. 14, Appellant argued that Appellees cannot hold Appellant personally liable for the arbitration award because (1) "the claims against [him] in his individual capacity were dismissed" in the Fairfax

Circuit Court; (2) "[n]o appearance was entered in the arbitration action by [him]"; (3) and the arbitration award amount is "wholly unjustified" given the services were worth $70,000. Bankr. Dkt. 34 ¶¶ 7, 11, 14. In December 2021, Appellees filed an opposition to Appellant's Objection, arguing it was "both premature and procedurally improper" given the recent conversion to Chapter 7 and the pending March 2022 deadline for filing proof of claims. Bankr. Dkt. 55 at 3. Appellees further argued that Appellant lacked standing as a Chapter 7 debtor because he lacked "pecuniary interest in the distribution of his assets among his creditors," where he had over $1,200,000 in unsecured creditor claims yet under $60,836.21 in available equity and/or assets. *Id.* at 3-4. In response, Appellant argued that he had a pecuniary interest because, absent Appellees' disputed pre-judgment attachment and even after the payment of the Trustee expenses and unsecured claims, Appellant could receive a "significant surplus" from the potential sale of his personal beach property. Bankr. Dkt. 58 ¶¶ 8-9.

In June 2024, the bankruptcy court held an evidentiary hearing and, on September 26, 2024, issued an order overruling the Objection and permitting Claim 14 to be filed. Bankr. Dkt. 224. Applying Virginia law, the bankruptcy court held that the evidence overwhelmingly supported the piercing of the corporate veil. *Id.* at 8-9. First, the bankruptcy court found VHI was an "alter ego" for Appellant because the evidence showed "VHI had no corporate records or officers, held no meetings and had no employees[,] . . . was grossly undercapitalized[,] . . . [had] no corporate formalities . . . [and was used by Appellant] to pay his personal expenses" and deposit personal funds. *Id.* at 8. Second, the bankruptcy court concluded that Appellant "used VHI to disguise wrongs," such as to "extract payments from clients under the guise of paying for necessary orders for their renovation projects" but instead using them for personal expenses. *Id.* The bankruptcy

court also determined that Appellant "used VHI to disguise his own personal funds as corporate funds to keep them beyond the reach of his creditors." *Id.*

In October 2024, Appellant filed a Notice of Appeal of the Bankruptcy Order, leading to this current proceeding. Bankr. Dkt. 227. On January 28, 2025, Appellant requested the bankruptcy court stay the Bankruptcy Order pending resolution of this appeal. Bankr. Dkt. 251. On February 28, 2025, the bankruptcy court denied the motion. Bankr. Dkt. 265. On June 12, 2025, this Court heard oral argument of the appeal.

## Legal Standard

Federal district courts are empowered to hear appeals from final judgments, orders, and decrees issued by the bankruptcy court. 28 U.S.C. § 158(a)(1). When considering an appeal from the bankruptcy court, the Court must review the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. *Shin v. Lee*, 550 F. Supp. 3d 313, 318 (E.D. Va. 2021) (citing *Gold v. First Tenn. Bank Nat'l Ass'n (In re Taneja)*, 743 F.3d 423, 429 (4th Cir. 2014)). Mixed questions of law and fact are reviewed "under a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining *de novo* the legal conclusions derived from those facts." *Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## Discussion

The parties dispute two issues: first, whether Appellant's case is equitably moot and, second, whether the bankruptcy court erred in concluding that VHI's corporate veil should be pierced so as to hold Appellant personally liable. Dkt. 10 at 6; Dkt. 5 at 7, 22.

Appellees contend that the Court need not reach the merits of this appeal because the matter is equitably moot. Dkt. 10 at 6. Per Appellees, Appellant failed to obtain a stay pending appeal prior to the distributions under the Plan of Liquidation and, therefore, relief here is inequitable.[2] *Id.* On the merits, Appellant challenges the bankruptcy court's decision to pierce VHI's corporate veil on the basis that it relied on improperly admitted evidence, unsupported facts, and incorrect legal grounds. Dkt. 5 at 7-8, 22-33. The Court finds, first, that the appeal is not equitably moot, and, second, that the bankruptcy court did not err in its decision to pierce the corporate veil.

### A. Equitable Mootness

This Court "has discretion whether to find an appeal equitably moot." *Patterson v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641, 698 (E.D. Va. 2022). Contrary to the constitutional doctrine of mootness, "equitable mootness is a pragmatic principle, grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable." *Mac Panel Co. v. Va. Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002). "Applied principally in bankruptcy proceedings because of the equitable nature of bankruptcy judgments, equitable mootness is often invoked when it becomes impractical and imprudent 'to upset the plan of

---

[2] At the time Appellees had filed their brief before this Court, the Chapter 7 Trustee had completed distributions. Bankr. Dkt. 274. However, since then, the bankruptcy court has ordered the Trustee to amend the Plan of Liquidation. Bankr. Dkt. 284 at 22. As of the date of this Memorandum Opinion and Order, no amended Plan of Liquidation has been filed on the bankruptcy docket.

6

reorganization at this late date.'" *Id.* (quoting *In re UNR Indus., Inc.,* 20 F.3d 766, 769 (7th Cir. 1994)). Accordingly, the Court need not "employ rigid rules" to determine the applicability of equitable mootness. *Id.*

The Fourth Circuit has articulated four factors to determine "whether judicial relief on appeal can, as a pragmatic matter, be granted":

> (1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties.

*Id.*; *see also Patterson*, 636 B.R. at 696. The Court must dismiss a matter as equitably moot "when implementation of the plan has created, extinguished or modified rights, particularly of persons not before the court, to such an extent that effective judicial relief is no longer practically available." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 841 F.2d 92, 96 (4th Cir. 1988). "While equitable mootness normally applies to appeals of debtor's confirmation plans, it can also apply to appeals of related bankruptcy court orders." *Wilmington Tr., Nat'l Ass'n v. Lord & Taylor LLC*, No. 3:20-cv-878, 2021 WL 3089105, at *8 (E.D. Va. July 22, 2021) (citing *Carr v. King (In re Carr)*, 321 B.R. 702, 702, 707 (E.D. Va. 2005)). Moreover, contrary to Appellant's assertion, while the "equitable mootness doctrine generally has been applied to substantially consummated Chapter 11 reorganizations," its "principles counseling pragmatism in the exercise of equity apply with equal force to the Chapter 7 liquidation of a bankruptcy estate." *In re Carr*, 321 B.R. at 707.

Appellees' equitable mootness argument rests on the premise that the Plan of Liquidation has been implemented, and that granting the requested relief would "in effect, nullify the implemented Plan . . . ." Dkt. 10 at 7. At the time Appellees filed their brief before this Court, the

7

bankruptcy court had already reviewed and approved the Plan of Liquidation, which the Trustee had begun executing. *See* Bankr. Dkt. 249. However, the bankruptcy court's August 28, 2025 Order reducing the legal fees awarded under the Plan reopened the implementation of the Plan. Bankr. Dkt. 284. Accordingly, the Court finds that the *Mac Panel* factors, when taken as a whole, do not warrant a finding of equitable mootness.

The first factor weighs slightly in favor of mootness. Appellant requested—but failed to obtain—a stay from the court of the September 26, 2024 Order. Bankr. Dkt. 265 (denying the stay). The Fourth Circuit has generally found the stay factor to weigh in favor of equitable mootness where a stay was requested yet denied. *Cadle Co. II v. Calvert Vill.*, 203 F.3d 819, at *2 (4th Cir. 2000) (unpublished table decision); *Mac Panel*, 283 F.3d at 625 (finding justification for equitable mootness because appellant requested but failed to obtain a stay); *see Clark*, 2019 WL 4673434, at *4. The few cases where courts in this Circuit have not followed that standard have generally involved requested relief that would not "affect the recovery of any creditor." *Patterson*, 636 B.R. at 699; *see In re Bate Land & Timber LLC*, 877 F.3d 188, 196 (4th Cir. 2017). Here, Appellant's requested relief *would* affect the recovery of creditors, including not only Appellees but also creditors impacted by the piercing of the corporate veil.

The Court is further persuaded by Appellees' claim that Appellant's request for a stay pending this appeal was relatively late in the appeal process. Dkt. 10 at 7. Appellees note that Appellant did not file the Motion to Stay the September 26, 2024 Order until January 28, 2025, six days before Appellees' brief was due to this Court. *Id.* n. 4. Although Appellant filed a separate motion to stay the approval of the Plan of Liquidation, he did not seek a stay in this matter until over a month after filing his brief before this Court. *See* Dkt. 11 at 3; Bankr. Dkt. 260.

Nevertheless, the remaining three *Mac Panel* factors weigh against equitable mootness in light of the bankruptcy court's recent order requiring an amended Plan of Liquidation. Under the second factor, the reorganization plan has not yet been substantially consummated because the Plan is set to be amended. Under 11 U.S.C. § 1101(2), substantial consummation requires:

> (A) Transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) Assumption by the debtor or the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) Commencement of distribution under the plan.

*See also Mac Panel*, 283 F.3d at 626. At the time of the parties' briefing, the Trustee had completed all distributions under the Plan, including to Appellees, and therefore the Plan could have been regarded as substantially consummated. Dkt. 10 at 7; Bankr. Dkt. 274 at 1; *In re Anderson*, 349 B.R. 448, 455 (E.D. Va. 2006) (finding consummation where trustee transferred 70% of bankruptcy estate); *In re Carr*, 321 B.R. at 708 (finding substantial consummation where the approved bankruptcy plan has been fully completed). However, because of the bankruptcy court's revised findings on legal fees, the creditor distributions under the Plan are now set to change and, therefore, no longer substantially consummated.

Furthermore, on the third factor regarding the impact of relief on the Plan, Appellees' concern that the requested relief would "nullify the implemented Plan of Liquidation, require the clawback of funds, [and] require the recalculation of distributions" is now moot because the recalculation of distributions is already underway. Dkt. 10 at 7-8. For the same reasons, as to the fourth factor on third-party rights, a favorable outcome for this appeal would not disturb the administration of the Plan. Even if the Plan's distributions were final, the Court agrees with Appellant that "[t]his is a two-party dispute . . . [with] no collateral damage to any third parties."

Dkt. 11 at 6; Bankr. Dkt. 238 at 15 (noting that all unsecured creditors will receive the same percentage distribution on their claims). Rather, this Court could fashion a remedy to redistribute Appellees' returned funds to other creditors, such that the requested relief could *benefit* third-party creditors. *Id.*; *Vaughn*, 671 B.R. at 707 (finding the fourth *Mac Panel* factor weighs against a finding of mootness where "relief could result in more of the estate going immediately towards repayment of his creditors."). Because this matter is not equitably moot, the Court now considers the merits of the case.

### B.  Piercing the Corporate Veil

On the merits, Appellant disputes the bankruptcy court's conclusion to pierce the corporate veil of VHI and hold Appellant personally liable for Appellees' judgment against VHI. Dkt. 5 at 22. Under Virginia law, a plaintiff seeking to pierce the corporate veil must demonstrate that (1) "the corporate entity was the *alter ego,* alias, stooge, or dummy of the individuals sought to be charged personally," and (2) "the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime." *Cheatle v. Rudd's Swimming Pool Supply Co.*, 360 S.E.2d 828, 831 (Va. 1987). In Virginia, "the standards for veil piercing are very stringent, and piercing is an *extraordinary measure* that is permitted only in the most egregious circumstances." *Oliver v. Omega Protein, Inc.*, No. 3:10-cv-47, 2011 WL 1044403, at *5 (E.D. Va. Jan. 31, 2011) (emphasis in original) (citation omitted). For the reasons that follow, the Court finds that both prongs of the veil-piercing test are met here.

At the outset, Appellant challenges the admissibility of over thirty exhibits entered into evidence during the bankruptcy court proceedings. Dkt. 5 at 7 (stating the bankruptcy court "committed reversible error" by overruling Appellant's objections to the exhibits that "became the foundation of [various witnesses'] testimony thereby further poisoning the well."). Per Appellant,

most of the disputed evidence "involved rulings pertaining to hearsay." *Id.* The Court finds no need to parse through each piece of disputed evidence. As outlined below, Appellant's own admissions as well as the witnesses' testimony under oath provide a sufficient basis for the bankruptcy court's judgment on the veil-piercing test, even without the disputed evidence. *See* Dkt. 10 at 8.

### i. *First Prong: Alter Ego*

Under Fourth Circuit law, the first prong of corporate veil piercing may be met where a single shareholder exercises "undue domination and control" over the corporation, no corporate formalities or records were maintained, no other officers and directors existed, and no dividends were paid. *Perpetual Real Est. Servs., Inc. v. Michaelson Props., Inc.*, 974 F.2d 545, 548 (4th Cir. 1992) (quoting *Beale v. Kappa Alpha Order*, 64 S.E.2d 789, 797 (Va. 1951)). The bankruptcy court concluded that the first prong "is undoubtedly met" because "[Appellant's] counsel conceded as much during his closing argument." Bankr. Op. at 8. In his closing argument, Debtor's counsel stated:

> Yes, it is undoubtedly a two-prong test. And the first one is, more or less - - it's easier to meet, and **I'm not going to contest it. Clearly the evidence shows that there was commingling of funds, lack of maintaining corporate formalities. So yes, no doubt about it, under the first prong of the two-part test, they prevail.**

Bankr. Dkt. 217 ("Transcript" or "Tr.") at 215:12-18 (emphasis added); Dkt. 10 at 9. Appellant's brief before this Court further concedes this prong, as his arguments on piercing the corporate veil exclusively focus on the second prong about the sham use of the corporation.[3] Dkt. 5 at 30-32.

---

[3] Moreover, Appellant's own testimony demonstrates that VHI had no employees; no financial statements, customer contracts, or corporate records; and no board or shareholder meetings. Bankr. Op. at 2-3 (citing Tr. at 85:8-13; 99:18-20; 100:1-101; 122:8-10; 122:23-25). Appellant's testimony also showed that VHI had negative business income and was operating at a loss, with over two hundred bounced checks and considerations of filing for corporate bankruptcy. *Id.* at 3 (citing Tr. at 105:7-11; 119:4-14; 153:12-20; 120:17-121:25); *see also Dana v. 313 Freemason,*

11

Therefore, the Court finds that the bankruptcy court did not err in finding the first prong to have been satisfied.

### ii. Second Prong: Use of the Corporation to Disguise Wrongs

The Fourth Circuit has made clear that the "alter ego" prong alone is not sufficient to pierce the veil under Virginia law—a "plaintiff must also establish 'that the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime.'" *Perpetual Real Est. Servs., Inc*, 974 F.2d at 548 (quoting *Cheatle,* 360 S.E.2d at 831). Here, the bankruptcy court concluded that Appellant "used VHI to disguise wrongs" by (1) "extract[ing] payments from clients under the guise of paying for necessary orders for their renovation projects" while using the funds for his personal expenses and (2) "us[ing] VHI bank accounts to keep his personal funds away from creditors to which he was personally liable." Bankr. Op. at 8. The bankruptcy court reasoned that "the record makes clear that Mr. Vaughn was using client funds because he was unable to stay afloat with his own personal money, and that he deposited funds into the VHI accounts with the intent of shielding those funds from his personal creditors." *Id.* at 9.

Appellant disputes both the bankruptcy court's relied-upon evidence and legal conclusion. Dkt. 5 at 30-32. First, Appellant challenges the factual basis for the bankruptcy court's decision. He contends that "the evidence at trial did not prove that the Defendant intentionally breached the contract" he executed with customers, which the bankruptcy court had suggested. Dkt. 5 at 31. He then asserts that "[t]he characterization that [he] used VHI to 'extract payments' from clients is also misleading." *Id.* He further argues that the bankruptcy court mischaracterized the evidence

---

satisfy the judgment against it is the result of the deliberate undercapitalization by the incorporating stockholders.").

when it stated that "he frequently and regularly used those [corporate] funds to pay for his own personal expenses." *Id.* at 32.

Despite these arguments, and as Appellees note, testimony at the hearing before the bankruptcy court provides ample evidence to support the court's finding of veil piercing. Dkt. 10 at 9-10. In his direct testimony, Appellant admitted that he would place money into VHI's bank accounts, even when it no longer operated, because he "had personal loans that were in default," and "if [he] put any money in [his] personal checking account, it would get siphoned out to pay the loans." *Id.* at 9 (quoting Tr. at 152:11-153:3). The bankruptcy court expressly relied upon this testimony in finding support for the second prong. Bankr. Op. at 8 ("Further, Mr. Vaughn expressly admitted on the record that notwithstanding the fact that VHI had ceased operating, he used VHI bank accounts to keep his personal funds away from creditors to which he was personally liable."). Appellant never disputed this testimony.

Furthermore, direct testimony at the evidentiary hearing provides support for the bankruptcy court's conclusion that Appellant "extracted" payments from clients. Bankr. Op. at 5. For example, Appellant's former client, Elizabeth Merck, testified that she sent Appellant a $16,400 payment for a renovation project after Appellant told her that payment "by a date certain" would grant her a "discount promotion." Tr. at 59:7-60:9. However, Appellant testified "no work was ever actually performed on the Merck project," and Ms. Merck testified that "despite representations from Vaughn that cabinets had been ordered, she later discovered that the order was never placed." Tr. at 58:21-59:3, 61:4-62:11, 116:2-6. Similarly, Appellees had made over $60,000 in payments to Appellant for orders Appellant claimed had been placed, when, in reality, they had not been. Dkt. 10 at 6 (citing Tr. at 164:18-165:1-11). Appellant had also told Appellees that if they paid an additional $12,000 to $24,000 in a matter of days, they could take advantage

13

of a discount promotion—a promotion that Appellees, on the other hand, believed had been covered by an earlier payment. *Id.* (citing Tr. at 167:7-25). Appellees testified that by June 2019, after Appellees paid VHI $70,000, VHI had virtually abandoned the project. Tr. 170:9-14.[4] Therefore, this Court finds that the bankruptcy court's conclusion as to the evidence supporting extraction was not clearly erroneous.

Next, Appellant challenges the bankruptcy court's legal conclusion that his conduct, assuming the admissibility of the evidence, constitutes a "legal wrong" warranting veil piercing. Dkt. 5 at 30-31. Appellant argues that the fact that he "used VHI to extract payments from clients under the guise of paying for necessary orders for their renovation projects when, instead he frequently and regularly used those funds to pay for his own personal expenses" is "not a legal wrong." *Id.* at 31. Likewise, he contends that the fact that "he used VHI bank accounts to keep his personal funds away from creditors to which he was personally liable" is also not "legally wrong." *Id.* at 32. Appellant further argues that corporate veil piercing is concerned with the corporation "gain[ing] an advantage" or being used "as a shield from corporate creditors"—as opposed to individuals protecting themselves. Dkt. 5 at 32; Dkt. 11 at 7.

Under Virginia law, this matter is a quintessential veil-piercing case, in which "a creditor of a corporation seeks to reach the assets of a corporate shareholder or director to satisfy a corporate debt." *C.F. Trust, Inc. v. First Flight Ltd. P'Ship*, 306 F.3d 126, 134 (4th Cir. 2002). "Virginia law requires proof of some legal wrong" before piercing the corporate veil. *Perpetual Real Est. Servs., Inc.*, 974 F.2d at 549. As Appellant notes, while the bankruptcy court relied upon

---

[4] Mr. Hassett testified: "By June 2019, we were pretty much convinced that Vaughn had abandoned the project. We were dealing with the insurance folks on the lower level. And at this time, you know, Vaughn was looking for more money to complete the project, and we had already paid seventy [thousand dollars] and really didn't get any work." Tr. at 170:10-14.

the showing of "injustice or fundamental fairness" in *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, that case applied South Carolina law. Bankr. Op. at 7 (citing 540 F.2d 681, 685-87 (4th Cir. 1976)); *Perpetual Real Est. Servs., Inc.*, 974 F.2d at 549 (distinguishing the standard in *Dewitt* from that of Virginia law); Dkt. 5 at 27.

Regardless, under a *de novo* review, the Court finds that the bankruptcy court's conclusion is correct even under Virginia law. The legal wrong requirement under Virginia law is "a broad category that includes using the corporate form to (i) evade personal obligations, (ii) perpetuate fraud or a crime, or (iii) commit injustice . . . ." *C.F. Trust, Inc. v. First Flight Ltd. P'Ship*, 111 F. Supp. 2d 734, 742 (E.D. Va. 2000);[5] *Greenberg v. Commonw. ex rel. Atty. Gen. of Va.*, 499 S.E.2d 266, 272 (Va., 1998); *C.F. Trust, Inc.* at 580 S.E. 2d at 811 ("The piercing of a veil is justified when the unity of interest and ownership is such that the separate personalities of the corporation and/or limited partnership and the individual no longer exist, and adherence to that separateness would create an injustice."). Here, the Court finds that Appellant's attempts to "extract payments" from clients under misleading pretenses and use corporate accounts to shield himself from his personal creditors served to evade his personal obligations and commit an injustice.

Appellant attempts to rely on *Perpetual Real Estate Services, Inc. v. Michaelson Properties, Inc.* to argue that his distribution of VHI funds to himself was not "unfair siphoning." Dkt. 5 at 28 (citing 974 F.2d at 545). That case is distinct from the facts here. In *Perpetual Real Estate Services*, the Fourth Circuit held that veil piercing was unjustified where the plaintiff had

---

[5] On appeal, the Fourth Circuit certified questions to the Supreme Court of Virginia on the state's recognition of "outsider reverse piercing." *C.F. Trust, Inc. v. First Flight Ltd. P'Ship*, 306 F.3d 126 (4th Cir. 2002). The Supreme Court of Virginia took up certification and answered. *C.F. Trust, Inc. v. First Flight Ltd. P'Ship.*, 580 S.E.2d 806, 811 (Va. 2003). Upon the Supreme Court of Virginia's answers, the Fourth Circuit affirmed the district court. *C.F. Trust, Inc. v. First Flight Ltd. P'Ship*, 338 F.3d 316 (4th Cir. 2003).

15

not demonstrated that a corporate form's distribution of funds to its sole shareholder illustrated the shareholder used the corporate form to "disguise wrongs." 974 F.2d at 551. The Court noted that the plaintiff and the corporate form had "entered into a longstanding contractual relationship," in which plaintiff "had full knowledge of the nature of its corporate partner," and even participated in decisions about asset distribution, such that it was "entirely foreseeable" that the corporate form would distribute funds to its shareholder. *Id.* at 549-50. In this case, however, Appellant's clients could not foresee that their payments would go toward Appellant's personal use as opposed to their purchased services. Furthermore, the clients lacked transparency into the nature of VHI, especially where Appellant had been misleading them on the status of their orders and payments. In fact, *Perpetual Real Estate Services* emphasized that courts should be wary of intervening in contracts or risks allocations between parties "[a]bsent some evidence of misrepresentation." *Id.* at 550. But here, the misrepresentation is clear. Similarly, courts in this Circuit have found that the transfer of assets to avoid creditors or personal liabilities is also a disguising of a legal wrong that warrants corporate veil piercing. *United Food & Com. Workers Int'l Union-Industry Pension Fund v. EC Mgmt. Servs. of Ga., Inc.*, No. 3:19-cv-247, 2021 WL 1234511, at *9 (E.D. Va., Mar. 31, 2021). Therefore, the bankruptcy court's determination on the second veil piercing factor is consistent with Virginia law.

### Conclusion

For the foregoing reasons, the Court finds that the matter is not equitably moot, and that the bankruptcy court did not err when it determined that Appellant could be held personally liable for VHI's debts to Appellees. Therefore, the Court finds that the bankruptcy court properly overruled Appellant's Objection to Claim 14 and allowed the Claim. Bankr. Op. at 9. Accordingly, it is hereby

**ORDERED** that the bankruptcy court's September 26, 2024 Order is **AFFIRMED**.

Entered this 29th day of September, 2025.
Alexandria, Virginia

Patricia Tolliver Giles
United States District Judge